[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11697
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-21118-FAM


ELBERT JOHNSON,

                                                      Plaintiff-Appellant,

versus

SANJAY RAZDAN,

                                                      Defendant-Appellee,

J. DWARES, et al.,

                                                      Defendants.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 30, 2014)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Elbert Johnson, an inmate at Dade Correctional Institution, appeals the district judge's granting summary judgment in his 42 U.S.C. § 1983 action for Dr. Sanjay Razdan. We affirm.

## I. BACKGROUND

Between October 2008 and November 2009, several medical professionals, including Dr. Razdan, a urologist, recommended Johnson undergo a prostate biopsy, because of significantly elevated prostate-specific-antigen levels, potential indicators of prostate cancer. Johnson refused a biopsy for several months, since the result of a previous prostate biopsy had been negative for cancer. After November 2009, Johnson agreed to a second biopsy, and, in May 2010, Dr. Razdan performed a transrectal ultrasound guided ("TRUS") biopsy of Johnson's prostate, the result of which again was negative.

Following the TRUS biopsy, Johnson experienced bleeding, pain, and several episodes of serious urinary blockage. In June 2010, a Foley catheter[1] was used to relieve Johnson's voiding and retention issues. When Johnson again experienced urinary retention in July 2010, Dr. Razdan inserted a suprapubic catheter[2] to allow Johnson to void urine. The following month, Johnson again had trouble urinating. To relieve a constriction of the urethra and prostate around the

---

[1] A Foley catheter is a catheter with a retaining balloon. *Stedman's Medical Dictionary* 293 (26th ed. 1995).

[2] A suprapubic catheter drains urine from one's bladder through an incision in the abdomen. *See* www.nlm.nih.gov.

bladder, Dr. Razdan performed a Holmium Laser Enucleation and Ablation of the Prostate ("HoLEAP") and removed part of Johnson's prostate.

In June 2011, Johnson filed an amended § 1983 complaint against Dr. Razdan and alleged Eighth Amendment violations. Between May and November 2009, he stated he had refused a second biopsy several times, including on three occasions when he was taken to Dr. Razdan's office. After his November 2009 refusal, Dr. Razdan told him his return visits had caused Dr. Razdan to lose $10,000. Johnson alleged Dr. Razdan performed the biopsy "manual[ly]" in a room outside of a hospital and claimed he was not "cleaned out" or administered any pain medication before the procedure. R. at 61. He asserted he was in good health until the prostate biopsy performed by Dr. Razdan, and he has suffered permanent damage, because of the unnecessary biopsy, Dr. Razdan's sub-standard procedures, and deliberate indifference.

Following discovery, Dr. Razdan moved for summary judgment and argued no competent evidence suggested he acted with deliberate indifference or Johnson's alleged injury was caused by his deliberate indifference. In support of his motion, Dr. Razdan submitted a statement of facts supported by (1) a transcript of Johnson's deposition; (2) several of Johnson's medical records; (3) an affidavit by Dr. Razdan in which he stated his background and discussed Johnson's medical history, the necessity of the second biopsy, and Johnson's treatments; and (4) an

affidavit by Dr. Marshall Kaplan, which supported Dr. Razdan's recommendation that Johnson undergo a second biopsy and the TRUS Biopsy.

The magistrate judge issued a report and recommendation ("R&R") and recommended granting Dr. Razdan summary judgment. The magistrate judge concluded Johnson had satisfied the objective component of his Eighth Amendment claim, but Johnson had not satisfied the subjective component, because he had not shown Dr. Razdan had acted with deliberate indifference to Johnson's medical needs. The magistrate judge determined Johnson's belief that the TRUS biopsy was unwarranted and had caused his subsequent medical conditions was contradicted by the undisputed record. The district judge adopted the R&R and granted summary judgment to Dr. Razdan.

On appeal, Johnson argues the district judge erroneously concluded he had produced no medical evidence showing a biopsy of Johnson's prostate performed by Dr. Razdan had caused Johnson to suffer any permanent injuries. Johnson contends the unnecessary biopsy, which he had refused multiple times, had caused urinary blockage that permanently had damaged his organs. Johnson further argues Dr. Razdan failed to obtain his informed consent for the biopsy and following procedures.

4

## II. DISCUSSION

We review a district judge's granting summary judgment de novo, and we consider the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Mere conclusions and unsupported factual allegations are insufficient to defeat a summary judgment motion. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

To prevail in a § 1983 civil rights action, a plaintiff must prove an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995). The Eighth Amendment prohibits deliberate indifference to serious medical needs of prisoners. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam). To prevail on a claim of inadequate medical treatment, a prisoner must establish (1) an objectively serious medical need, (2) deliberate indifference to that need on the part of the defendant, and (3) an injury caused by the defendant's wrongful conduct. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).[3] To establish deliberate indifference, Johnson must show

---

[3] In *Goebert*, we distinguished between the analysis for serious medical needs and delay

5

(1) subjective knowledge of a risk of serious harm and (2) disregard of that risk

(3) by conduct that is more than gross negligence. *Id.* at 1326-27.  A difference in

medical opinion alone does not constitute deliberate indifference so long as the

treatment provided is minimally adequate. *Harris v. Thigpen*, 941 F.2d 1495,

1504-05 (11th Cir. 1991).  Similarly, incidents of malpractice alone are insufficient

to establish Eighth Amendment violations. *Id.* at 1505.

We generally will not consider a legal issue that was not presented to the

trial judge. *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1332 (11th Cir.

2001).  A plaintiff may not raise a new claim for the first time in a brief opposing

summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1313

(11th Cir. 2004) (per curiam).  Although pro se briefs are to be construed liberally,

a pro se litigant who offers no substantive argument on an issue in his initial brief

abandons that issue on appeal. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir.

2008) (per curiam).

---

in care for prisoner cases.  In contrast to medical care or treatment, as in this case, the analysis is
different for prisoner cases involving delay in care:

> In cases that turn on the delay in providing medical care, *rather than the type of medical care provided*, we have set out some factors to guide our analysis.  Where the prisoner has suffered increased physical injury due to the delay, we have consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay.

*Goebert*, 510 F.3d at 1327 (emphasis added).

6

Johnson's claims regarding informed consent are not properly before us, because (1) he raised the lack of informed consent regarding the HoLEAP procedure for the first time in his opposition to Dr. Razdan's summary judgment motion, *see Gilmour*, 382 F.3d at 1313, and (2) he raised the lack of informed consent concerning the other procedures performed by Dr. Razdan for the first time on appeal, *see Slater*, 634 F.3d at 1332.  By failing to state any arguments supporting his passing reference to various injuries allegedly caused by the suprapubic catheter, Johnson has abandoned them, regardless of whether he sufficiently presented those issues to the district judge.  *See Timson*, 518 F.3d at 874.

Johnson's remaining Eighth Amendment claims essentially implicate two separate acts by Dr. Razdan: (1) the recommendation Johnson undergo a second biopsy, which Johnson asserts was unnecessary; and (2) the manner in which Dr. Razdan performed the biopsy.  Concerning Dr. Razdan's performance of the biopsy, Johnson complains about both immediate pain suffered during the biopsy and various medical ailments that followed it.

Regarding the recommendation that a second biopsy be performed, Johnson has shown nothing in the record, other than his own assertions, sufficient to establish a genuine issue of material fact for his Eighth Amendment claims.  Dr. Razdan submitted his own affidavit explaining his medical opinion that a second

biopsy was warranted.  He also provided the affidavit of Dr. Kaplan, another

medical expert, who concurred with Dr. Razdan's recommendation.  Johnson's

allegation that Dr. Razdan accused Johnson of causing Dr. Razdan to lose $10,000

by refusing treatment, even if believed, would be insufficient to refute the expert

opinions of two doctors that the recommendation of a second biopsy was medically

sound.  Consequently, Johnson's challenge to Dr. Razdan's recommendation,

including Johnson's assertion that the second biopsy was unnecessary, amounts to

nothing more than a difference in opinion, which is insufficient to show deliberate

indifference.  *See Harris*, 941 F.2d at 1504-05.

Johnson also has failed to establish a genuine issue of material fact regarding

whether Dr. Razdan's performance during the biopsy amounted to more than gross

negligence.[4]  *Goebert*, 510 F.3d at 1327.  As an initial matter, nothing in the

record, except for Johnson's own conclusory assertions, supports his contention the

biopsy performed by Dr. Razdan was not a TRUS biopsy that was performed

"manual[ly]."[5]  *See* R. at 61.

---

[4] "Although we have occasionally stated, in dicta, that a claim of deliberate indifference requires proof of 'more than mere negligence,' *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999), our earlier holding in *Cottrell* [*v. Caldwell*], 85 F.3d [1480,] 1490 [(11th Cir. 1996)], made clear that, after *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994), *a claim of deliberate indifference requires proof of more than gross negligence*." *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (emphasis added).

[5] Aside from his conclusory allegations that Dr. Razdan performed the biopsy in a way that was a "less[er] and easier procedure . . . without utilizing the hospital equipment," R. at 410, Johnson has not explained the difference between a biopsy that is performed "manually" and one that is not performed "manually."

8

Dr. Razdan's affidavit states that nothing in Johnson's medical records suggests his performance of the biopsy was inappropriate or deviated from the applicable standard of care. Dr. Kaplan similarly attested that review of Johnson's medical records—including ultrasound pictures taken during the biopsy—did not show Dr. Razdan performed the biopsy improperly or in a manner designed to cause unnecessary pain to Johnson. Moreover, both doctors agreed that some temporary pain during the procedure and bleeding for a few weeks following the procedure are common. Given the undisputed expert testimony regarding the pain and bleeding that are common with a TRUS biopsy, even when viewed in the light most favorable to Johnson, *Mann*, 588 F.3d at 1303, the record does not support a finding that Dr. Razdan performed Johnson's biopsy in a manner that constituted more than gross negligence. *Goebert*, 510 F.3d at 1327. For Johnson's medical treatment to have amounted to a constitutional violation, it would have had to have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (citation and internal quotation marks omitted).

Johnson has not identified witnesses, whom he claims should have been questioned regarding his condition after the biopsy. He also has not explained how any such witnesses would have shown Dr. Razdan's care was more than grossly negligent or how the biopsy caused his medical ailments. Aside from Johnson's

9

own conclusory assertions, the only evidence of causation in the record is the temporal proximity between the scheduled biopsy and the medical ailments that followed.  Consequently, Johnson has not shown genuine issues of material fact existed with respect to his various medical ailments following the TRUS biopsy.

Dr. Razdan, however, presented undisputed expert testimony that he performed the biopsy appropriately and within the applicable standard of care.  Dr. Razdan and Dr. Kaplan agreed some of the symptoms Johnson experienced following his biopsy were common.  Even assuming some causal connection existed between the TRUS biopsy and Johnson's subsequent medical conditions, the record does not support a finding that Dr. Razdan's care was anything other than well within the range of reasonable medical care and certainly not more than grossly negligent.  *Goebert*, 510 F.3d at 1327.   Therefore, the district judge properly granted summary judgment.

**AFFIRMED.**